## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**TAMMY SUE POPE,**
        **Plaintiff,**

**v.**                                                    **Case No: 3:08cv269/MCR/MD**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
        **Defendant.**

_____

## REPORT AND RECOMMENDATION

        This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Pope's application for disability insurance benefits and Supplemental Security Income benefits under Titles II and XVI of the Act.

        Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Plaintiff, Tammy Sue Pope, filed applications for benefits claiming an onset of disability as of May 15, 2002.  The applications were denied initially and on reconsideration, and Ms. Pope requested a hearing before an administrative law judge (ALJ).  A hearing was held on October 2, 2007 at which Ms. Pope was represented by counsel and testified.  A vocational expert also testified.  The ALJ entered an unfavorable decision (tr. 14-25A) and Ms. Pope requested review by the Appeals Council without submitting additional evidence.   The Appeals Council declined review (tr. 6-8).  The Commissioner has therefore made a final decision, and the matter is subject to review in this court. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007); *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This timely appeal followed.


## FINDINGS OF THE ALJ

Relative to the issues raised in this claim, the ALJ found that Ms. Pope has severe impairments of (1) major depression, (2) degenerative disc disease, (3) chondromalacia of the patella, and (4) fibromyalgia, but that she does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix One; that she had the residual functional capacity to lift and carry 20 pounds frequently and 50 pounds occasionally, to sit for six hours at a time, to stand for one hour at a time, to walk for one hour at a time and to sit, stand and walk overall for eight hours during an eight hour workday, and to perform essentially normal postural actions; that she is mildly limited in her ability to understand, remember and carry out simple instructions and to make judgments on simple decisions; that she is moderately limited in her ability to understand, remember and carry out complex instructions, in her ability to make judgments or complex decisions and to interact appropriately with the public, supervisors and co-workers, and to respond appropriately to the usual work

situation and changes in the work setting; that she is unable to perform any of her past relevant work as a sales clerk, an electronic equipment repairer or photographer; that she was 22 years old - a younger individual - as of her onset date, with at least a high school education; that considering her age, education, work experience and residual functional capacity there are jobs that exist in significant numbers in the national economy that she can perform; and that she is not under a disability as defined in the Act.

## STANDARD OF REVIEW

In Social Security appeals, this court must review de novo the legal principles upon which the Commissioner's decision is based.   *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)).  There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid.  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).  Failure to either apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The court must also determine whether the ALJ's decision is supported by substantial evidence.  *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).  Even if the proof preponderates against the Commissioner's decision, if supported by substantial evidence, it must be affirmed.  *Ingram*, 496 F.3d at 1260;  *Miles*, 84 F.3d at 1400.  Substantial evidence is more than a scintilla but less than a preponderance, and encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion.  *Moore*, 405 F.3d at 1211 (citation omitted).  In determining whether substantial evidence exists, the court  must view the record as a whole, taking into

account evidence favorable as well as unfavorable to the Secretary's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence.  *Moore*, 405 F.3d at 1211 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  Findings of fact of the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1260.

   A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

   The social security regulations establish a five-step evaluation process to analyze claims for both SSI and disability insurance benefits.  *See Moore,* 405 F.3d at 1211;  20 C.F.R. § 416.912 (2005) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2005) (five-step determination for DIB).  A finding of disability or no disability at any step renders further evaluation unnecessary.  The steps are:

   1.     Is the individual currently engaged in substantial gainful activity?

   2.     Does the individual have any severe impairment?

   3.     Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

   4.     Does the individual have any impairments which prevent past relevant work?

   5.     Do the individual's impairments prevent any other work?

These regulations place a very heavy burden on the claimant to demonstrate both a qualifying impairment or disability and an inability to perform past relevant work. *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir.1985)).  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Allen v. Bowen,* 816 F.2d 600, 601 (11th Cir. 1987).  If the Commissioner carries this burden, claimant must prove that she cannot perform the work suggested by the Commissioner.  *Doughty,* 245 F.3d at 1278 n.2; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

Ms. Pope served in the United States Navy from October 1999 until September 2001 when she was medically discharged.  She injured her knees during boot camp and was in a motor vehicle accident just before discharge which also injured her knees.  Since her discharge her primary care has been with the Department of Veterans Affairs (VA).

The earliest VA records date from May 2002 when she was examined by a physician's assistant.  She gave a history of injuring her knees in the Navy and injuring her neck, mid back and low back in an automobile accident.  She walked with a slight limp but there was no obvious deformity of either knee.  There was no evidence of laxity or instability in either knee although there was tenderness to palpation at the patellofemoral joint.  There was no abnormality of curvature in her spine but she reported tenderness in her neck.  Range of motion was essentially normal and there was no spasm noted.  The physician's assistant diagnosed bilateral patellofemoral syndrome of both knees, degenerative meniscal pathology of the left knee and plica syndrome of the left knee, no pathology to account for abnormal gait and complaints of chronic pain in the neck, upper and lower back (tr.

639-641).  Ms. Pope was treated regularly at the VA Clinic, primarily for her knees and low back, with frequent counseling to stop smoking.  Although the VA records are extensive, there is very little in them in the way of reports from physicians on physical examinations or specific findings.  Craig Wyrosdick, M.D., her primary care physician, treated her with medication and referral to a pain management specialist but did not record any opinions concerning physical limitations.  Steve Hirschorn, Ph.D., a psychologist at the VA assigned GAF scores but offered no further opinion.  The same is true of Storne Shively, Ph.D., Margaret Miller, M.D., a VA psychiatrist, and Arthur Soule, III, M.D., also a VA psychiatrist.

Tests showed mild central spondylosis at L5-S1 with disc degenerative changes, but no nerve root compression or frank disc herniation.  The remaining levels appeared normal and there was no central or foraminal canal stenosis at any level (tr. 231).  An MRI of Ms. Pope's neck taken on October 21, 2004 showed mild degenerative disc disease and mild spondylosis from C2-3 through C6-7 but there was no focal herniation and no evidence of significant central canal or neural foraminal stenosis (tr. 249).  An MRI taken on November 29, 2004 showed normal discs and vertebra in the thoracic spine down to the L4-5 level.  At L5-S1 there was mild dehydration of the disc but no evidence of a bulge, no disc protrusion and no compromise in any aspect of the spinal canal (tr. 239).

More than three years later, in September 2007, an MRI on Ms. Pope's right knee indicated stretch and strain injuries at the insertions of the anterior and posterior crucial ligaments with bone bruising, a junction tear in the meniscus capsule, and some swelling.  The underlying findings appeared to be chronic with a potential for injury or recurrent injury (tr. 884).

Ms. Pope was referred to Kurt Krueger, M.D., a pain management specialist, in 2004.  On her first visit Ms. Pope gave a history consistent with the one she gave the VA.  She said she was taking Methocarbamol and Etodlac, which overall had been helpful.  She complained of bilateral knee pain.  Physical examination of the

spine showed essentially normal range of motion in her neck and low back.  She had diffuse areas of tenderness in her thoracic and lumbar regions but no spasm (tr. 203-205).  During the course of treatment Dr. Krueger performed five lumbar epidural steroid injections, all of which gave immediate relief but no long-term relief (tr. 179, 185, 191, 197, 199).  Additional nerve blocks were performed in April 2005 which Ms. Pope reported made her 60% better, but then she fell and hurt her back (tr. 175-178).  When Dr. Krueger last saw Ms. Pope he recorded normal range of motion in the back but increased low back pain on hyper-extension with exquisite tenderness to palpation along the facet joints in the lower lumbar region.  Her strength was normal in all muscle groups, her sensory sensation was intact throughout, motor stretch reflexes were two over four equally and bilaterally in her legs.  Dr. Krueger felt that Ms. Pope needed to obtain radio frequency lesioning but noted that this had not been approved by the VA (tr. 173-174).

On December 3, 2006 Ms. Pope was examined by Cynthia Javellana, a psychiatrist at the VA.  The purpose of the examination was a compensation and pension evaluation for mental disorder.  Dr. Javellana noted that Ms. Pope was currently rated 30% disabled for her back, neck and knee problems.  Since her discharge from the service she had suffered from pain in her knees and her entire spine, and complained of migraine headaches which she said had become more incapacitating and severe due to her continuing physical problems.  She said she was depressed a great deal with an erratic appetite with some recent weight gain.  She had problems sleeping and a low energy level.  Dr. Javellana noted on examination that Ms. Pope was cooperative but appeared quite depressed.  She was emotional when she spoke about her physical problems and admitted to feeling increasingly frustrated, irritable and upset.  She denied suicidal ideations or intent.  There was no evidence of hypomanic symptoms, no obsessive-compulsive symptoms, and her cognizant functions were within normal range.  Dr. Javellana's diagnosis was (1) major depressive disorder, secondary to general medical

condition and (2) depressive disorder, not otherwise specified.  It was Dr. Javellana's opinion that Ms. Pope suffered from a major depressive disorder that included her chronic back and leg injuries as well as her migraine headaches which caused chronic pain and disability.  She felt that Ms. Pope had significant and major impairments in social or industrial functioning, that her problems with depression were the result of her service connected medical disability and that she was precluded from gainful employment (tr. 644-646).

Ms. Pope was referred for three different examinations by the State Agency. The first, on September 15, 2005, was performed by Steve Hirschorn, Ph.D.  Ms. Pope gave Dr. Hirschorn a history consistent with her history at the VA.  She walked with a normal gait and climbed a flight of stairs, but advised that when she sat in class (she was going to college at the time) it took her ten minutes to get out of her seat).  She was not currently complaining of pain.  She seemed sad, her memory was intact, and her IQ appeared to be in the average range.  Dr. Hirschorn's diagnosis was adjustment disorder with depressed mood and major depression.  He assigned a GAF of 52 and recommended individual counseling (tr. 257-259).  A second psychological evaluation was performed by John Duffy, Ph.D. on June 29, 2007.  Ms. Pope gave a consistent history.  On mental status examination her speech was clear and her language functions were intact, she denied hallucinations or delusions, her thought processes were organized and goal directed.  Her mood was depressed and her affect was sad and restricted.  Her judgment appeared to be adequate, she denied panic symptoms or obsessions or compulsions and had occasional passive suicidal thoughts.  She also had sleep disturbance.  She completed an MMPI-II which appeared to be valid and showed depression and anxiety problems.  Dr. Duffy's diagnosis was major depression, severe, without psychosis and he assigned a GAF of 55.  Ms. Pope's depression overall was creating a moderate degree of impairment in thinking and social functioning but her primary difficulties appeared to be related to her physical conditions (tr. 762-768).

Ms. Pope's final evaluation was for her physical problems and was performed by Michael Kasabian, D.O., an internist.  Ms. Pope told Dr. Kasabian that she had fibromyalgia and bulging discs in her lumbar spine and neck, knee pain, migraine headaches, and had been told she needed surgery for her left knee.  She was unable to tell the doctor what specific movements or activities made her problems better or worse.  She simply said that she hurt all the time and that mental stress made her feel like she couldn't move.  On physical examination her pulses were intact and equal in all four extremities and there was no swelling; deep tendon reflexes were plus two over four in all extremities; sensation was intact; muscle strength was five over five in all four extremities; Ms. Pope could stand on heels and toes, walk without an assistive device and did not limp; there was no atrophy or asymmetry; she had multiple trigger points of tenderness in her knees, worse on the left, but no swelling; there was some crepitation in the left knee; there were multiple trigger points throughout her spine but no muscle spasm; she got on and off the examining table well and without any assistance; and her fine grip dexterity was normal and she was able to remove and put her shoes back on and tie them.  Dr. Kasabian's impression was fibromyalgia, multiple pains in the knees and elbows, history of migraine headaches, and mood disorder (tr. 262-268).

Dr. Kasabian also filled out a form concerning Ms. Pope's ability to do work-related activities.  He opined that she could occasionally lift and carry 21-50 pounds and frequently lift and carry 11-20 pounds; that she could sit for six hours a day and stand and walk for one hour each, with a combination of eight hours during an eight hour day.  She did not need to use a cane, she could frequently perform normal functions with her hands and feet as well as climbing, balancing, stooping, kneeling, crouching, and crawling frequently, and it was possible she would have knee pain operating a motor vehicle.  Finally, Dr. Kasabian opined that Ms. Pope could shop, travel without a companion, walk without a wheelchair or a cane, walk a block at a reasonable pace on rough or uneven surfaces, use standard public transportation,

climb a few steps at a reasonable pace, prepare a simple meal and feed herself, care for her personal hygiene and sort, handle and use paper files (tr. 753-758).

## DISCUSSION

Ms. Pope argues that the ALJ erred in failing to give appropriate weight to the opinions of her treating physicians, in failing to apply the correct pain standard, and in ignoring her migraine headaches, and that she was disabled from her onset date as a matter of law.   The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained.   The issue thus presented is whether the ALJ's decision that Ms. Pope was not disabled, in light of her physical and mental condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

### 1.     Treating physician opinions

Ms. Pope first contends that the ALJ did not give appropriate weight to the opinions of her treating physicians, particularly Dr. Javellana.   Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986).   "Good cause" exists when:  (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Phillips,* 357 F.3d at 1241; see also *Lewis*, 125 F.3d at 1440 (citing cases).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  Where

a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical impairments at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R. 404.1527(d).

The opinion of a non-examining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician, whose opinion generally carries greater weight.  *See* 20 CFR § 404.1527(d)(1);  *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985); *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1255 (M.D.Fla. 2005).   However, a brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability.  *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987); *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 352 F.3d at 1241.    Failure to do so is reversible error.  *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986));[1] *see also Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 591 (11th Cir. 2006) (Table, text in WESTLAW)(also citing *MacGregor*).

---

[1]*MacGregor* further held that "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." 786 F.2d at 1053.

## Dr. Javellana

_____Ms. Pope argues that the ALJ did not give appropriate weight to the opinion of Dr. Javellana.  The ALJ gave Dr. Javellana's opinion little weight because her opinion was not consistent with her own assessment of moderate symptomatology, and because it was not consistent with the record overall (tr. 24).  Ms. Pope argues that this was not supported by the medical record.  The undersigned disagrees, but even if that finding were not supported, it would make no difference because Dr. Javellana was not a treating physician; she saw Ms. Pope only once.  Title 20 C.F.R. § 404.1527(d) describes in detail the factors that go into making disability determinations, and the weight to be afforded medical opinions.[2]  These emphasize the importance of a "detailed, longitudinal picture" which gives a "unique perspective" and which is supported by laboratory and clinical findings and is consistent with the medical record generally.  It is the treating physician who gives the unique perspective based on his or her longitudinal treatment of the patient.

---

[2](d) How we weigh medical opinions.  Regardless of its source, we will evaluate every medical opinion we receive.  Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

(1) Examining relationship.  Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

(2) Treatment relationship.  Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

(I) Length of the treatment relationship and the frequency of examination. * * * When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(ii) Nature and extent of the treatment relationship.  Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion.  We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. * * *

Clearly, the longitudinal picture referred to by the regulations is what is seen by a treating physician over a long period, something that does not exist here.

Moreover, Dr. Javellana's opinion was that Ms. Pope was precluded from gainful employment.  A physician's opinion that a patient is "unable to work" or is "disabled" (or similar term) is not dispositive for purposes of Social Security claims. The Commissioner's regulations and the interpretations of those regulations clearly provide that an ALJ should give weight to a physician's opinions concerning the nature and severity of a claimant's impairments, but that the ultimate question of whether there is disability or inability to work is reserved to the Commissioner.  For instance, Title 20 C.F.R. § 404.1527(e)(1) specifically states that a finding of disability or inability to work by a medical source does not mean that the Commissioner will automatically reach the same conclusion.  *See also* Title 20 C.F.R. § 416.927(e). Furthermore, the Commissioner "will not give any special significance to the source" of an opinion on issues reserved for the Commissioner.  Title 20 C.F.R. § 404.1527(e)(3) and § 416.927(e)(3);  *see also* Social Security Ruling 96-5p (whether an individual is disabled is a question reserved to the Commissioner; treating source opinions on such questions are "never entitled to controlling weight or special significance").  Although such opinions on disability are not entitled to controlling weight, they must not be ignored, and the Commissioner must examine the entire record to determine whether such opinions are supported by the record. SSR 96-5p.  In *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) the court reversed the ALJ's finding of no disability, in part because the ALJ relied on a treating physician's report that the claimant could no longer work as a longshoreman when this report was ambiguous as to whether the claimant could do *any* work, and the physician subsequently wrote a letter saying the claimant was completely disabled.

To require the Commissioner to accept as controlling a statement that a patient is or is not disabled would require the Commissioner to credit the physician

not only with knowledge of the patient's physical condition, but also with an understanding of the nuances of how the regulations analyze physical limitations with respect to job experience, age, education, transferability of skills, the definitions of the various levels of exertion relevant to types of work, and similar matters.  Moreover, a physician's opinion on whether a person is able to work may be colored by such things as the physician's knowledge of local hiring practices, whether there are specific job vacancies, a person's reluctance to do a particular kind of work, and similar matters.  These things are not properly considered by the Commissioner in determining disability.  Title 20 C.F.R. §§ 404.1566, 416.966.  For all these reasons, a physician's opinion that his or her patient cannot work or is disabled is not a conclusive medical opinion for the purpose of Social Security benefits determinations and by itself is not entitled to special significance.  The ALJ was not required to give great weight to Dr. Javellana's opinion.

### Drs. Miller and Soule

Drs. Miller and Soule are psychiatrists at the VA.  Neither of them offered opinions concerning Ms. Pope's mental limitations other then to record a GAF score at each visit.  The GAF scores ranged from 45 to 55, depending on Ms. Pope's then mental state.  That range goes from serious to moderate symptoms, but a GAF score, without evidence that it impairs the ability to work, does not establish an impairment.  *Camp v. Bartlett*, 103 Fed.Appx. 352, 354 (10th Cir. 2004).  The assignment of a GAF score is the last part (or axis) of a mental health practitioner's statement of a diagnosis, and is intended to rate a patient's current general overall functioning, which is useful in tracking a patient's progress in global terms. *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1984) (DSM-IV). The GAF scale is intended for use by practitioners in making treatment decisions, *see* DSM-IV-TR at 32–33, and neither Social Security regulations nor case law require an ALJ to determine the extent of an individual's mental impairment based solely on a GAF score.  In fact, the Commissioner has declined to endorse the GAF scale for

"use in the Social Security and SSI disability programs," and has indicated that GAF scores have no "direct correlation to the severity requirements of the mental disorders listings." *See* 65 Fed. Reg. 50746–01, 50764–65, 2000 WL 1173632 (August 21, 2000). Accordingly, the ALJ did not err in not giving controlling weight to the various GAF scores assigned by Drs. Miller and Soule.

     2.    <u>Subjective complaints of pain</u>

     Ms. Pope next contends that the ALJ did not credit the VA physicians regarding physical impairments. This argument has two components: the weight to be given the opinion of a treating physician, and the assessment of pain as a disabling condition.  As to the first, the weight properly to be given a treating physician was discussed in the foregoing section.  As to the second, pain is treated by the Regulations as a symptom of disability.  Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms."  *Accord* 20 C.F.R. § 416.929.  The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[3] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Ogranaja v. Commissioner of Social Security*, 186 Fed.Appx. 848, 2006 WL 1526062, *3+ (11th Cir. 2006) (quoting *Wilson*) (Table, text in WESTLAW); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991).

---

[3]*Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson, supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)(citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1259 (M.D.Fla. 2005). However, the presence or absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Marbury*, 957 at 839-840; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision. *MacGregor v. Bowen*, 786 F.2d at 1054. Where he fails to do so, the Eleventh Circuit has stated that it would hold as a matter of law that the testimony is accepted as true. *Holt v. Sullivan*, 921 F.2d at 1223; *MacGregor v. Bowen*, 786 F.2d at 1054. Although the Eleventh Circuit does not require an  explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1210 (11th

Cir. 2005) (internal quotations and citations omitted).  And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence.  *Wilson*, 284 F.3d at 1225-1226; *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F.Supp.2d at 1259.

Underlying the *Hand* standard is the need for a credibility determination concerning a plaintiff's complaints of pain.  Those complaints are, after all, subjective.  "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[4]  People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others.  "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain.  This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." *Hand, supra,* at 1548-49.  It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence." *Arnold v. Heckler*, 732 F.2d 881, 884  (11th Cir. 1984).  Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that.  The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

---

[4]  Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit.  *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

MRI studies showed that Ms. Pope has back and knee problems, and the thrust of her argument is that these should be taken as sufficient evidence to support a finding of disabled.  In challenging the ALJ's reliance on the opinion of Dr. Kasabian, counsel argues that the voluminous medical reports "suggest" that Ms. Pope cannot do as Dr. Kasabian opined.  Suggesting something does not make it so, however.  Ms. Pope has the burden of proving disability.  None of the VA physicians who treated her gave an opinion about what her physical limitations might be, much less an opinion that her condition was so limiting as to support a finding of disability. Furthermore, the record evidence does not suggest that such a finding would be medically supported.

The ALJ's findings concerning Ms. Pope's subjective complaints of pain were likewise supported by substantial record evidence.  The ALJ found that Ms. Pope's diagnostic work-up demonstrated only minor degenerative changes and that clinical examinations yielded no significant neurological findings (tr. 23, 305, 342, 408, 433, 439, 446, 506, 518, 527, 541, 675, 640, 680, 684, 717, 807).  Ms. Pope's clinical findings showed only tenderness and mildly limited spinal motion (tr. 23, 173-209, 696).  An MRI scan of Ms. Pope's cervical spine showed only mild degenerative disc disease and mild spondylosis with no disc herniation or evidence of central canal stenosis (tr. 224, 249).  An MRI scan of the lumbar spine showed only minor central spondylosis at L5-S1 with no nerve root compression or disc herniation (tr. 231, 239).  The most recent physical examination showed Ms. Pope had a full range of motion in her spine (tr. 23, 750).  The ALJ also noted that Ms. Pope's clinical knee abnormalities were consistently minor (tr. 23, 465, 513-14, 503, 640, 726, 792, 872). X-rays of her knees were normal (tr. 812) and a MRI scan demonstrated only minor degenerative changes of the knees (tr. 23, 884-85).  The ALJ noted a consultative physical examination revealed trigger point tenderness and crepitation, but Ms. Pope had a normal gait and a full range of motion bilaterally (tr. 23, 748-51).  In addition, Ms. Pope reported that her medication relieved her pain with no side effects (tr. 105,

173, 425, 455). "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987) (footnote omitted)).

The ALJ also noted that during most of the time of Ms. Pope's claimed disability she was attending college, and in May 2006 graduated with an AA degree in Applied Science in Electrical Engineering Technology. She did well, finishing with an overall GPA of 3.24 out of a possible 4.0 (tr. 22, 167-68).

The ALJ found that Ms. Pope had underlying medical conditions that were confirmed by MRI studies, but correctly noted that the studies indicated relatively minor degenerative changes. The VA records are replete with Ms. Pope's subjective complaints of pain, but there are very few indications that any VA physician performed tests to corroborate her complaints. And while her objectively determined medical condition can reasonably be expected to give rise to pain, it does automatically translate into disabling pain. The ALJ found that Ms. Pope's claims of disabling pain were exaggerated. That determination was part of his "realm of judging," and was supported by the record as a whole.

3.    Migraine headaches

Finally, Ms. Pope contends that the ALJ ignored her migraine headaches in finding her not disabled. She argues that her complaints of headaches were brushed off by a finding that there were no objective findings supporting the claim. The ALJ did not ignore the condition. He did note lack of objective evidence, because two MRI scans and a CT scan of Ms. Pope's brain were read as normal (tr. 210, 531, 669, 796). Her treating physician noted in April 2007 that the migraines were "well treated on cyproheptadine." (Tr. 796). Finally, the ALJ found that the medical evidence did not suggest that headaches precluded Ms. Pope from working. This is amply supported by the fact that she was continuously in college during

most of the relevant period, and did very well, without any indication of missed classes or inability to stay focused on her studies.

There was substantial record evidence to support the ALJ's determination that Ms. Pope was not disabled by any of her claimed physical and mental problems, and she is not entitled to reversal. Accordingly, it is respectfully RECOMMENDED that the Commissioner's decision be AFFIRMED, that judgment be entered in favor of the defendant, and that the clerk be directed to close the file.

At Pensacola, Florida this 5th day of May, 2009.


/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**



## NOTICE TO PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**